## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

John Westley,

               Plaintiff,

v.

Henry L. Bryant; Minnesota Attorney
General Office; Florida Attorney General
Office; John Garry; Kathleen L. Gearin;
Miami Dade County; James Robert Mann;
Mitchell P. Korus; Danielle Mann; Laurel
M. Isicoff; Dylan Pukel; Lawrence Allen
Schwartz; Beatrice A. Butchko; Jennifer
Viciedo Ruiz; Jennifer D. Bailey; Victoria
Lynn Platzer; Bayview Loan Servicing LLC;
Chicago Title Insurance; Kimberly S. LeCompte;
Richard I. Korman; Brad Herman Trushin;
Sapient Corporation; Starbucks Corporation;
HBA Insurance Inc.; 605 Lincoln Road Office
Condominium Association; Rhonda Montoya;
Piero Filpi; James Korein; Diane V. Ward;
Fidelity & Deposit Company of Maryland;
Harold Rosen; and Stinson Leonard Street,

               Defendants.

Civ. No. 14-5002 (PJS/BRT)

**REPORT AND
RECOMMENDATION**

---

John Westley, 3432 Denmark Ave. #188, St. Paul, MN 55123, *pro se* Plaintiff.

Kathyrn I. Landrum, Esq., Minnesota Attorney General's Office, counsel for Defendant
Minnesota Attorney General Office.

Mark S. Dunn, Esq., Florida Attorney General's Office, and Kathryn I. Landrum, Esq.,
Minnesota Attorney General's Office, counsel for Defendants Florida Attorney General
Office, Lawrence Allen Schwartz, Beatrice A. Butchko, Jennifer D. Bailey, Victoria
Lynn Platzer, and Diane V. Ward.

Christopher P. Renz, Esq., and David J. McGee, Esq., Chestnut Cambronne PA, counsel
for Defendants Mitchell P. Korus, 605 Lincoln Road Office Condominium Association,
and James Korein.

Dylan Pukel, 9240 SW 72nd Street, Suite 114, Miami, FL 33173, *pro se* Defendant.

Debra Auerbach, Esq., Joseph Valdivia, Esq., and Rachel Beige, Esq., Cole, Scott & Kissane, P.A.; and Kevin J. Short, Esq., counsel for Defendant Jennifer Viciedo Ruiz.

Kelly S. Hadac, Esq., and Christian A. Brandt, Esq., HKM Law Group, counsel for Defendants Bayview Loan Servicing LLC and Kimberly S. LeCompte.

Bradley N. Beisel, Esq., and David J. Krco, Esq., Beisel & Dunlevy, PA, counsel for Defendant Chicago Title Insurance.

Brad Herman Trushin, 12550 Biscayne Blvd., Suite 904, North Miami, FL 33181, *pro se* Defendant.

Deborah A. Ellingboe, Esq., and Staci L. Perdue, Esq., Faegre Baker Daniels LLP, counsel for Defendant Sapient Corporation.

Susan D. Thurmer, Esq., and Robyn K. Johnson, Esq., Cousineau McGuire Chartered, counsel for Defendant Starbucks Corporation.

Donald M. Papy, Esq., and Nicholas Kallergis, Esq., City of Miami Beach; and John W. Lundquist, Esq., and Rachna B. Sullivan, Esq., Fredrikson & Byron, P.A., counsel for Defendant Rhonda Montoya.

Jeffrey S. Storms, Esq., Newmark Storms Law Office; and Rafael J. Sanchez-Aballi, Esq., Rafael J. Sanchez-Aballi, P.A., counsel for Defendant Piero Filpi.

Harold Rosen, 407 Lincoln Road, Suite 2A, Miami Beach, FL 33139, *pro se* Defendant.

Lowell J. Noteboom, Esq., and Andrew W. Davis, Esq., Stinson Leonard Street LLP, counsel for Defendant Stinson Leonard Street.

---

BECKY R. THORSON, United States Magistrate Judge.

# I.  INTRODUCTION

John Westley, a Minnesota resident proceeding *pro se*, has filed a fourteen-count complaint against thirty-two Defendants, alleging a litany of claims stemming from the purchase, use, and eventual foreclosure on two office condominiums located at 605

Lincoln Road in Miami Beach, Florida ("Florida condominiums"). (Doc. No. 1, Compl.) The crux of Westley's complaint is that a far-flung cabal of "corrupt," "bigoted," and "treasonous" mortgage lenders, realtors, insurance companies, convicts, corporations, attorneys general, lawyers, judges, and municipalities conspired to fraudulently induce him into guaranteeing the mortgage for the Florida condominiums; interfere with his commercial use of that property; foreclose on the property and evict him from the premises; destroy records, thwart Freedom of Information Act ("FOIA") requests, and otherwise interfere with the legal proceedings over the property; obstruct federal criminal investigations into public corruption; and have him wrongfully arrested in Florida "for non-payment of child support for three African-American children that [he] did not father" and "physically banned from all Miami Dade County [] court buildings."[1] (*See id.*) Not only that, but Westley further alleges that these "combined acts of coerced domestic terrorism [and] public corruption" were perpetrated on behalf of "Mossad Israeli[] Defense Force operatives," and that several of the Defendants have been granted

---

[1]     The named Defendants in this case are federal prisoner Henry L. Bryant; the offices of the attorneys general of Minnesota and Florida; current and former state judges Kathleen Gearin, Jennifer Bailey, Victoria Platzer, Beatrice Butchko, Diane Ward, and Lawrence Schwartz; federal bankruptcy judge Laurel Isicoff; attorneys John Garry, Dylan Pukel, Jennifer Viciedo Ruiz, Bradley Trushin, Richard Korman, Kimberly LeCompte, Rhonda Montoya Hasen, and Harold Rosen; Minnesota law firm Stinson Leonard Street LLP; Miami-Dade County, Florida; realtors James Mann, Mitchell Korus, and James Korein; coffee retailer Starbucks Corporation; marketing and consulting firm Sapient Corporation; mortgage company Bayview Loan Servicing LLC; insurance companies Chicago Title Insurance, HBA Insurance, and Fidelity & Deposit Company of Maryland; the 605 Lincoln Road Office Condominium Association; Florida state employee Danielle Mann; and Florida resident Piero Filpi. (*See* Compl. at 2–6, 8, 16, 19, 22–24, 29, 36; Doc. Nos. 69–73, 78, 92, 153, 179.)

immunity from federal laws by engaging in "acts of sodomy and adulterous sexual relations with female Miami Dade County judges, court officers and government officials." (*Id.* ¶¶ 15, 19, 32.)

Based on these allegations, Westley lists fourteen purported causes of action for inducement, misrepresentation, fraud, tortious interference, defamation, "conversion/civil theft," unjust enrichment, racketeering, "whistleblower retribution," breach, "negligence/malpractice," FOIA violations, civil rights violations, and "public trust/policy corruption." (*Id.* at 31–37.) In addition to his enumerated counts, Westley's complaint is strewn with references to assorted laws, provisions, and regulations—both civil and criminal—that the Defendants allegedly violated, including the First Amendment, the Fifth Amendment's Taking Clause, the Fourteenth Amendment's Equal Protection and Due Process clauses, the Fraud Enforcement and Recovery Act ("FERA"), the Real Estate Settlement Procedures Act ("RESPA"), the Fair Credit Reporting Act ("FCRA"), the Truth in Lending Act ("TILA"), the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), the Occupational Safety and Health Act ("OSHA"), the False Claims Act ("FCA"), the Americans with Disabilities Act ("ADA"), the federal mail and wire fraud statutes, the Espionage and Sedition Acts, and unidentified Uniform Building Codes and Uniform Commercial Codes. (*See id.* at 6– 30.) This is the third lawsuit that Westley has filed against a passel of defendants relating to the Florida condominiums, and the fifth suit seeking redress for alleged wrongs related to property located in Miami.

Nineteen of the thirty-two named Defendants have moved to dismiss Westley's

claims pursuant to Fed. R. Civ. P. 12(b) or 12(c) for lack of personal jurisdiction,

improper venue, or failure to state a claim upon which relief may be granted.[2] (*See* Doc.

Nos. 22, 24, 33, 35, 43–44, 47, 53, 55, 75, 77, 89, 92, 112, 114, 119, 122, 148, 150, 152,

177–78, 251–52.) Rather than timely responding to the vast majority of those

submissions, Westley has filed a flurry of motions requesting entry of default against

Defendant Mitchell Korus, seeking to strike Defendants Harold Rosen's and Dylan

Pukel's respective motions to dismiss for lack of personal jurisdiction, and challenging

---

[2]     Specifically, Starbucks and Sapient have moved for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (*See* Doc. Nos. 22, 24, 33, 35.) Stinson Leonard Street LLP and Chicago Title Insurance have moved for judgment on the pleadings based on a failure to state a claim, pursuant to Rule 12(c) and (h)(2)(B). (*See* Doc. Nos. 53, 55, 112, 114.) Florida judges Schwartz, Butchko, Bailey, Platzer, and Ward, as well as Florida attorney Trushin, have moved for dismissal under Rule 12(b)(2), (3), and (6) for lack of personal jurisdiction, improper venue, and failure to state a claim for relief. (*See* Doc. Nos. 43–44, 89, 92.) The 605 Lincoln Road Office Condominium Association, realtors Korus and Korein, and Florida attorneys Pukel, LeCompte, and Rosen have moved for dismissal under Rule 12(b)(2) for lack of personal jurisdiction. (*See* Doc. Nos. 47, 119, 122, 148, 150, 152.) Florida attorney Montoya Hasen moves for dismissal under Rule 12(b)(2) and (5) for lack of personal jurisdiction and insufficient service of process. (*See* Doc. Nos. 75, 77.) Florida attorney Ruiz moves for dismissal under Rules 12(b)(2) and (6) for lack of personal jurisdiction and failure to state a claim for relief. (*See* Doc. Nos. 177–78.) And recently, the Florida Attorney General's Office filed a motion to dismiss based on lack of personal jurisdiction, improper venue, failure to state a claim, and sovereign immunity under the Eleventh Amendment. (Doc. Nos. 251–52.)

As for the thirteen remaining Defendants, Bayview Loan Servicing LLC and Piero Filpi have filed responsive pleadings (Doc. Nos. 21, 166); James Robert Mann has yet to respond to the complaint; and there has been no indication that Westley has properly effected service of process on Bryant, Gearin, Garry, Isicoff, Korman, Danielle Mann, HBA Insurance, Fidelity & Deposit Company of Maryland, the Minnesota Attorney General's Office, and Miami-Dade County.

the admission *pro hac vice* of chosen counsel for Defendants Jennifer Bailey, Beatrice

Butchko, Victoria Platzer, Lawrence Schwartz, Diane Ward, and the Florida Attorney

General's Office.[3] (*See* Doc. No. 106, 129, 168, 185, 206, 226.) Westley has also filed a

motion for leave to file an amended complaint, pursuant to Fed. R. Civ. P. 15(a), which

not only seeks to rework his claims against Defendants Sapient Corporation and

Starbucks Corporation, but also to join three additional defendants to this suit and to add

claims concerning a man named Alex Omes, who ostensibly "died in late January 2015

under suspicious circumstances on the date of his own $30,000,000 civil suit" in Miami-

Dade County court.[4] (Doc. No. 202.)

The parties' motions have been referred to this Court pursuant to 28 U.S.C.

§ 636(b)(1). (*See* Doc. No. 5.) For the reasons detailed below, this Court recommends

that the three dismissal motions filed by Defendants Schwartz, Butchko, Bailey, Platzer,

Ward, Trushin, and the Florida Attorney General's Office be granted on the ground of

---

[3]     The only dismissal motion that Westley has formally and timely responded to in
writing is LeCompte's motion to dismiss for lack of personal jurisdiction. (*See* Doc.
No. 240.) Although Westley sought and was granted an extension of time to file a written
response to that motion only, his response purports to also respond to the motions filed by
Chicago Title Insurance and Mitchell Korus. (*See* Doc. No. 222; Doc. No. 224; Doc.
No. 240 at 6–7.) Moreover, in an attempt to respond to the motions filed by other
Defendants, Westley has submitted unsworn declarations from Charles Ibanez and
Dr. Duncan Ross. (*See* Doc. Nos. 194, 195.) Those declarations do not even broach the
arguments that Westley has failed to state a viable claim for relief. Nor are they
subscribed as true under penalty of perjury, as required by 28 U.S.C. § 1746.

[4]     A number of Defendants have opposed Westley's motion for leave to amend his
complaint, principally on the ground that he has failed to comply with D. Minn. LR
15.1(b) by attaching a copy of the proposed amended complaint to his motion. (*See* Doc.
Nos. 208, 209, 212, 213, 225, 245.)

improper venue; that Westley's motion for leave to file an amended complaint be denied; that the entire case be dismissed without prejudice for improper venue; and that all other pending motions be denied as moot. Moreover, given Westley's demonstrated penchant for filing duplicative and deficient lawsuits alleging similar claims against a growing number of defendants, this Court further recommends that he be enjoined from filing any further lawsuits, pleadings, or other papers in the District of Minnesota relating to the defendants, facts, or issues involved in this or related actions unless he is represented by a licensed attorney or obtains prior approval from a judicial officer of this District.

## II. BACKGROUND

In January 2008, Westley personally guaranteed a mortgage under which his Minnesota non-profit organization, All for the Earth Foundation ("AFTEF"), purchased two office condominiums and "related sidewalk deed rights" at 605 Lincoln Road in Miami Beach, Florida. (*See* Compl. ¶ 7); *Westley v. Mann* (*Westley II*), 896 F. Supp. 2d 775, 801 (D. Minn. 2012). The mortgage was subsequently assigned to Bayview Loan Servicing, LLC ("Bayview"). *Westley II*, 896 F. Supp. 2d at 801. Westley and his businesses, FTV/Fashion Studios/Fashion Lounge and the Womb/Krib TV Broadcasting, entered into a long-term commercial lease for the premises, which they intended to use to "operate broadcast stations," produce music videos, stage fashion shoots, and "host fundraising events." (Compl. ¶ 8.) As part of the property purchase and leasehold, Westley and AFTEF allegedly wired $10,000 from his personal bank account in Minnesota to cover closing costs, fees, and title insurance; paid $117,000 in property taxes; and outlaid over $400,000 to obtain "Certificates of Occupancy and Use" and to

bring the premises into compliance with "ADA access, zoning, Federal Historical Preservation area authorizations, fire life safety protections, [and] OSHA requirements." (*See id.* ¶¶ 7, 9, 11, 18.)

In his current suit, Westley alleges that various Defendants "fraudulently induced" him into guaranteeing AFTEF's mortgage, leasing the premises, paying taxes and fees, and making improvements to the property by misrepresenting that it was "lawfully deeded, accessible, usable, and occupiable." (*Id.* at 8–10, 26, 31–32.) He also alleges that various Defendants interfered with his commercial use of the Florida condominiums, both because he was "doing business with . . . African Americans, Haitians and Muslims" and in retaliation for his cooperation with "Federal criminal public corruption investigations." (*Id.* ¶¶ 11–14, 18.) Among other things, Westley asserts that the Defendants "repeatedly complained . . . about Muslims, Haitians and [] African-Americans access and use of the property," and conspired to "obstruct and prevent" compliance with "OSHA standards," "ADA access laws," and "fire life safety regulations" by failing to respond to his requests to achieve such compliance, then intimidating the lawyers he hired to obtain such compliance (Defendants Pukel, Korman, Rosen, and Trushin), and ultimately issuing "building permits to third parties that authorized and resulted in the destruction of the recently obtained Federal ADA access, OSHA workplace compliances, occupancy certifications and fire life safety protections." (*See id.* ¶¶ 14–19.)

Bayview eventually initiated foreclosure proceedings on the property in Florida state court. (*See id.* ¶¶ 20–23); *Westley II*, 896 F. Supp. 2d at 801. In January 2010,

AFTEF filed for bankruptcy in Florida to avoid foreclosure, and Westley retained Trushin and Pukel to represent his and his business associates' "creditor property interests, lien rights, [and] lease interests." (*See* Compl. ¶ 20.) The bankruptcy proceedings were apparently dismissed by United States Bankruptcy Judge Laurel M. Isicoff (a named Defendant in this case), and Bayview was able to obtain a judgment of foreclosure on the property, a judgment of deficiency against Westley and AFTEF in the amount of $141,462.29, and an order evicting Westley and his businesses from the premises. *See Westley II*, 896 F. Supp. 2d at 801; (Compl. ¶¶ 20, 22–23). Bayview also secured a judgment of reforeclosure to extinguish the liens that Westley had placed on the property. *See Westley II*, 896 F. Supp. 2d at 801; (Compl. ¶¶ 24–25).

In February 2011, Westley filed a *pro se* complaint in Miami-Dade County court against Bayview for, among other things, trespass, conversion, tortious interference, breach of contract, conversion, fraud, fraud in the inducement, misrepresentation, racial harassment, civil rights discrimination, extortion, collusion, and identity theft. *See Westley v. Bayview Loan Servicing, LLC* (*Westley I*), No. 10-25216 CA 24 (Fla. Cir. Ct.); *see also Westley II*, 896 F. Supp. 2d at 801; (Compl. ¶ 24). Bayview moved to dismiss the case, and while Westley filed a motion to amend his complaint, he refused to file the proposed amended complaint. *Westley II*, 896 F. Supp. 2d at 801. Westley was eventually barred on October 25, 2011, from proceeding *pro se* in the Miami-Dade County court for repeatedly violating court orders and rules and repeatedly filing immaterial and irrelevant pleadings. *See Westley II*, 896 F. Supp. 2d at 801; (Compl. ¶ 25). Westley now alleges that, for "racially and religiously bigoted reasons," various Defendants interfered with the

bankruptcy, foreclosure, eviction, and other Florida legal proceedings by bribing his attorneys and the presiding judges (Defendants Schwartz, Butchko, Bailey, Platzer, Ward, and Isicoff); preventing "required responses to [his] and media outlets' [FOIA] requests"; destroying his and his business partners' "corporate records, legal files and proprietary property"; having him "illegally detained and wrongly arrested . . . for non-payment of child support for three African-American children that [he] did not father" and then destroying "all public records of [that] wrongful arrest"; having him barred from the Miami-Dade County court; and "repeatedly refusing to acknowledge receipt of . . . [his] appellate court filing fee payments." (*See* Compl. ¶¶ 13, 19–26.) He further alleges that a number of Defendants used his "personal wire information, financial files and banking records" for purposes of "identity theft, false reporting, and credit fraud." (*Id.* ¶ 30.)

Two months after he was enjoined from proceeding *pro se* in Miami-Dade County court, Westley continued to press his claims of fraud, inducement, misrepresentation, unjust enrichment, racketeering, conversion, tortious interference, breach of contract, public corruption, and civil rights violations, though this time in the District of Minnesota against eleven out-of-state defendants.[5] *See Westley II*, No. 11-cv-3704, Doc. No. 1. Westley's claims were dismissed on sundry grounds, including lack of personal

---

[5]     Four of the Defendants in this case—James Mann, Mitchell Korus, Dylan Pukel, and Jennifer Ruiz—were also defendants in *Westley II*. The claims against each of those defendants were dismissed without prejudice for failure to prosecute because Westley had not served them within 120 days after his complaint was filed, as required by Fed. R. Civ. P. 4(m). *Westley II*, No. 11-3704, 2014 WL 1607801 (D. Minn. Apr. 22, 2014).

jurisdiction, *res judicata*, failure to state a claim for relief, and failure to prosecute. *See Westley II*, No. 11-3704, 2014 WL 1607801 (D. Minn. Apr. 22, 2014); *id.*, 2012 WL 6591354 (D. Minn. Nov. 27, 2012); *id.*, 896 F. Supp. 2d 775 (D. Minn. 2012). In dismissing his claims, the court emphasized that a number of the out-of-state defendants had no direct contact with Minnesota; that the "events central to the case" concerned "the Florida property and its use" and had "no connection to [Minnesota]"; that Westley's complaint was "convoluted" and rife with "conclusory allegations" that were "woefully inadequate to meet [federal] pleading requirements"; and that many of the statutes cited in the complaint either did not apply under the facts alleged (*e.g.*, TILA, FERA, and USERRA), did not provide a private right of action (*e.g.*, OSHA, the federal mail fraud statute, and the federal wire fraud statute), or did not exist (*e.g.*, the federal Uniform Building Code). *See Westley II*, 896 F. Supp. 2d at 791–800, 802, 805–06; *id.*, 2012 WL 6591354, at *11–14.

Westley now alleges that Defendant Stinson Leonard Street LLP, which represented some of the Florida defendants in *Westley II*, conspired with numerous other Defendants to "gain unfair advantage" and to "obstruct timely justice" by engaging in "barred ex-parte communications"; suborning perjury; bribing the presiding judges and magistrates; "prejudicially influencing former law partners, presiding magistrates, court officers, bar associates and fellow public union members"; "illegally recording calls and transmitting conversations with Plaintiff"; and preventing service of a summons for Dylan Pukel. (Compl. ¶¶ 31–33.) He further alleges that numerous Defendants, including Stinson Leonard Street, "bribed, coerced, fraudulently acted and illegally influenced" the

11

Minnesota Attorney General's Office, assistant attorney general John Garry, and now-retired Minnesota judge Kathleen Gearin "to require that the taxpayers and citizens of the State of Minnesota unlawfully pay for the defense of their fellow publically corrupt employees and court officers from the State of Florida." (*See id.* ¶ 32.)

In July 2013, while the litigation in *Westley II* was still ongoing, Westley filed a separate suit in the District of Minnesota alleging similar claims of inducement, misrepresentation, fraud, tortious interference, defamation, conversion, unjust enrichment, racketeering, whistleblower retribution, breach, malpractice, and civil rights violations in connection with a different piece of property that he had leased and then lost in the Verona Condominiums in Miami, Florida. *See Westley v. Alberto* (*Westley III*), No. 13-cv-2044 (D. Minn.). The case was dismissed without prejudice for improper venue because most of the defendants were Florida residents and "all of the events and omissions alleged took place in Florida," meaning that the case "should have been brought in Florida, if anywhere." *Id.*, Doc. No. 54 at 6–7. The Eighth Circuit summarily affirmed on May 2, 2014. *See id.*, Doc. No. 62.

Westley promptly refiled that case in the Southern District of Florida, which summarily dismissed his complaint for failing to comply with Fed. R. Civ. P. 8(a)(2)'s short-and-plain statement requirement, "Rule 10(b)'s requirement that discrete claims should be plead in separate counts," and Rule 9(b)'s heightened pleading requirement for allegations of fraud. *Westley v. Alberto* (*Westley IV*), No. 1:14-cv-22939, Doc. No. 14 at 16 (S.D. Fla. Aug. 25, 2014). The court emphasized that Westley did not "identify which allegations form the factual basis for each of his thirteen claims for relief" and often

12

"lump[ed] all twenty Defendants together in his allegations of wrongdoing, without explaining what each Defendant did and the factual basis for each one's liability." *Id.* Although Westley was afforded an opportunity to file an amended complaint that complied with federal pleading requirements, he did not do so. *Westley IV*, Doc. No. 15. Accordingly, the court dismissed the case without prejudice and denied all pending motions as moot. *Id.* Three months later, Westley filed his current complaint.

### III.  ANALYSIS

**A.     Venue**

Nineteen of the thirty-two named Defendants in this action have moved to dismiss Westley's complaint on grounds of lack of personal jurisdiction, improper venue, or failure to state a claim on which relief may be granted. (*See* Doc. Nos. 22, 33, 43, 47, 53, 75, 89, 112, 119, 148, 150, 177, 251.) Seven of those Defendants—Schwartz, Butchko, Bailey, Platzer, Ward, Trushin, and the Florida Attorney General's Office—specifically argue that venue is improper in Minnesota. (*See* Doc. Nos. 43, 89, 251.) Another four Defendants—Chicago Title Insurance, Bayview, Stinson Leonard Street LLP, and Filpi— have raised improper venue as an affirmative defense in their respective answers to the complaint. (*See* Doc. No. 20 at 3; Doc. No. 21 at 6; Doc. No. 27 at 3; Doc. No. 166 at 3.) This Court agrees that this case is not properly venued in Minnesota and, for that reason, it need not decide whether personal jurisdiction is lacking over any of the non-resident Defendants or whether Westley has failed to state a plausible claim for relief.

The federal venue statute, 28 U.S.C. § 1391, provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are

residents of the State in which the district is located," or in a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(1)–(2). The purpose of the venue statute is to protect defendants "against the risk that a plaintiff will select an unfair or inconvenient place of trial," *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979), by ensuring that the defendants are not "haled into a remote district, having no real relationship to the dispute," *Richards v. Aramark Servs., Inc.*, 108 F.3d 925, 928 (8th Cir. 1997) (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). Although the forum chosen by a plaintiff need not be the single "best" venue for adjudicating his claims, it must have a "substantial connection" to those claims. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003).

In deciding whether a "substantial part of the events or omissions" giving rise to a plaintiff's claims occurred within the filing forum, courts look to whether material acts or omissions within that forum bear a close nexus to the overall nature of the plaintiff's claims. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d Cir. 2005) (explaining that substantiality for venue purposes is "determined by assessing the overall nature of the plaintiff's claims" and deciding whether "material acts or omissions within the forum bear a close nexus to the claims"); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003) (explaining that substantiality under § 1391(b)(2) requires consideration only of "those acts and omissions that have a close nexus to the wrong"); *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295–96 (3d Cir. 1994) ("In assessing whether events or omissions giving rise to the claims are substantial, it is

14

necessary to look at the nature of the dispute."). The focus of the inquiry is on the location of the defendants' relevant activities, not on the plaintiff's activities or the effect that the defendants' conduct had on the plaintiff in the forum state. *See Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014); *Woodke*, 70 F.3d at 985. Moreover, when reviewing a motion to dismiss for improper venue, a court need only accept the plaintiff's well-pled factual allegations as true, not his legal conclusions or other conclusory statements. *See Hancock v. Am. Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1260–61 (10th Cir. 2012); *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 11 (D.D.C. 2009); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," conclusory statements "couched" as factual allegations, or "naked assertions devoid of further factual enhancement") (quotations and brackets omitted).

Here, venue is not proper in Minnesota. Twenty-four of the named Defendants are listed as having addresses outside of Minnesota (twenty-two of which are Florida residents), and the crux of Westley's claims center on the purchase, use, and eventual loss of the Florida condominiums through foreclosure and eviction proceedings that likewise took place in Florida. (*See generally* Compl.) To the extent that a discernable factual basis undergirds Westley's spartanly pled counts for relief,[6] those counts focus on events

---

[6]     For example, Westley's fraud count alleges that the Defendants committed various "fraudulent acts" against him, "related business interests, the public courts and tax payers of the United States of America," including "mortgage fraud, banking fraud, real estate fraud, wire fraud, domestic terrorism, mail fraud, cont[r]act fraud, tax fraud and public corruption fraud." (Compl. at 32.) Similarly, Westley's count for tortious interference

(Footnote Continued on Next Page)

that occurred predominantly, if not exclusively, in Florida — from the allegedly

fraudulent misrepresentations that the Florida condominiums were "lawfully deeded,

accessible, usable and occupiable," to the allegedly defamatory statement that he was

"the deadbeat father of three African-American children," to the purportedly tortious

interference with his commercial use of the property for retaliatory and bigoted reasons,

to the breach of "agreements, leases, [and] cont[r]acts," to the denial of his FOIA

requests. (*See id.* at 10–14, 19, 22, 31–35.) The absence of any direct and substantial

connection to this forum is not surprising given that the claims and allegations set forth in

Westley's complaint appear to mirror those that he advanced in *Westley II*, where "the

events central to the case" were found to "deal with the Florida property and its use" and

to have "no connection" to Minnesota. *See Westley II*, 896 F. Supp. 2d at 793.

In addition to swapping some of the *Westley II* defendants for others, Westley's

current complaint ropes in several Minnesota residents involved in defending that prior

litigation and alleges that those legal proceedings were marred by "barred ex-parte

---

(Footnote Continued from Previous Page)
alleges that the Defendants interfered with his "business interests" and "civil rights
associations for stated treasonous reasons, bigoted causes, [and] life safety
endangerments," while his count for civil rights violations states that the Defendants
"violated the United States Constitutional Civil Rights of Plaintiff, related minority
business interests[,] United States military servicemen associates, and media interests,"
including "violations of Freedom of Speech, Freedom of Assembly, Freedom of Religion
and denial of equal protections for public court due process access for relief and
restitution." (*Id.* at 33, 37.)

communications," perjury, bribery, and "illicit[] influence [of] court officers."[7] (*See* Compl. ¶¶ 31–33.) Those newly added allegations of misconduct, however, are not sufficient to establish that a substantial part of the events giving rise to his claims occurred in Minnesota. First, the litigation defense in *Westley II* is only indirectly or tangentially related to the thrust of his claims, which continue to center on the same alleged acts of fraud and other misconduct occurring in Florida in connection with the purchase, use, and eventual loss of the Florida condominiums. *See Jenkins Brick Co.*, 321 F.3d at 1371 ("Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered."). Second, and relatedly, the alleged wrongful actions that occurred during that prior litigation constitute a qualitatively and quantitatively small part of the events underlying his claims, which overwhelmingly occurred in Florida. *See Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993) (holding that venue was improper in the District of Columbia because the events and omissions relevant to the case "took place predominantly at Terre Haute"). Third, and perhaps most importantly, Westley's conclusory allegations of "barred ex-parte communications," bribery, perjury, and illicit influence occurring in Minnesota—none of which are elucidated by concrete examples or supported by specific, well-pleaded facts—are insufficient to support venue in this forum and to subject the Defendants, the vast majority of whom are Florida

---

[7]     The Minnesota Defendants include Stinson Leonard Street LLP, the Minnesota Attorney General's Office, assistant attorney general John Garry, and now-retired Minnesota judge Kathleen Gearin. (*See* Compl. ¶¶ 2, 31–32.)

residents, to the burden and inconvenience of litigating Westley's Florida-focused claims

here. *See James*, 639 F. Supp. 2d at 11 ("In considering a Rule 12(b)(3) motion, the court

accepts the plaintiff's well-pled factual allegations regarding venue as true . . . . The

court, however, need not accept the plaintiff's legal conclusions as true."); *see also Iqbal*,

556 U.S. at 678 (explaining that "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions," conclusory

statements "couched" as factual allegations, or "naked assertions devoid of further factual

enhancement") (quotations and brackets omitted).

 The lack of a sufficiently close, direct, or otherwise substantial connection

between Westley's suit and this forum is illustrated by Westley's own arguments in

support of venue. In his complaint (and elsewhere), Westley contends that venue is

appropriately laid in this Court for myriad reasons, including that he and AFTEF are

residents of Minnesota; the "[f]acts alleged and claimed primarily occurred thru Federal

Wire transfers and United States Postal Service Money Orders originating in . . .

Minnesota"; correspondence relating to the Florida condominiums was exchanged

between the Defendants in Florida and Westley and AFTEF in Minnesota; relevant

records are stored in Minnesota; he has been "barred from pursuing . . . legal claims in

Florida courts" by the Defendants; the Defendants are "attempting to collect a

fraudulently obtained judgment against [his] personal property located in . . . Minnesota";

he was "unlawfully detained" by Florida authorities "due to local public corruption, bias

and prejudice designed to prevent non-resident outsiders equal protection access in

Florida civil courts"; the Defendants have "willfully availed themselves of the right to

conduct interstate commerce" with Minnesota residents; and he cannot obtain an impartial trial "within any Florida State or Miami Dade County venue courts due to public corruption, judge shopping, influence peddling, racketeering, corruption, fraud, incompetence, treasonous acts, and domestic terrorism." (*See* Compl. ¶¶ 6–7; Doc. No. 194 at 2; Doc. No. 195 at 2.)

That Westley and AFTEF are residents of Minnesota and wired money to Florida are largely irrelevant to the question of venue, which focuses on the Defendants and the location of their allegedly wrongful activities. *See Leroy*, 443 U.S. at 183–84 (explaining that "the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place for trial" and, for that reason, "Congress has generally not made the residence of the plaintiff a basis for venue . . ."); *Steen*, 770 F.3d at 703 ("[T]he court's *focus* must be on relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state."). Likewise, the mere fact that the Defendants allegedly "availed themselves of the right to conduct interstate commerce" with Minnesota residents and sent correspondence to this forum constitutes an insubstantial part of the events giving rise to Westley's claims. *See Daniel*, 428 F.3d at 434 ("ABEM's transmittal into the Western District of New York of a half-dozen letters . . . constitutes only an insignificant and certainly not a substantial part of the events or omissions giving rise to the plaintiff's antitrust claims.") (brackets and quotations omitted); *Cottman Transmission Sys.*, 36 F.3d at 294 ("The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those events or omissions giving rise to the claim . . . .")

(quotation omitted). And Westley's remaining allegations about fraudulently obtained judgments and being barred from Florida courts and detained "due to local public corruption" all concern judgments, legal proceedings, and other events occurring in Florida. Indeed, at the motions hearing held on March 31, 2015, Westley stated that the reason he filed this suit in Minnesota is because Florida courts and Florida authorities have been complicit in covering up the alleged misconduct that took place in Florida.

Westley cannot circumvent venue requirements based on vague, conclusory, and unsupported allegations of misconduct aimed at the prior Minnesota litigation in *Westley II*, which itself was nothing more than litigation over the very same claims asserted here. This Court has an obligation to "strictly" construe the congressionally enacted venue statute by taking "seriously the adjective 'substantial.'" *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). This Court concludes that a "substantial part" of the events underlying Westley's claims did not take place in Minnesota, and that forcing the mostly out-of-state Defendants to litigate in this forum would both be unfair and inconvenient. Accordingly, this Court recommends that Defendants Schwartz, Butchko, Bailey, Platzer, Ward, Trushin, and the Florida Attorney General's Office's motions to dismiss be granted on the ground of improper venue. And given that Westley's claims against all of the Defendants, including those that have not asserted improper venue, are intertwined and arise from the same underlying set of facts, this Court recommends that the entire case be dismissed without prejudice for improper venue. *See* 28 U.S.C. § 1406(a) (requiring dismissal or transfer of "a case laying venue in the wrong division or district"); *Thompson v. Greenwood*, 507 F.3d 416, 420 (6th Cir. 2007) ("[I]f a case is

20

brought in an improper venue and an interested party timely objects, a district court has only two options: (1) dismiss the case, or (2) transfer the case to a jurisdiction of proper venue, if it be in the interest of justice."); *Quality Improvement Consultants, Inc. v. Williams*, No. 02-3994, 2003 WL 543393, at *10 (D. Minn. Feb. 24, 2003) (refusing to sever a case where venue was proper as to some claims given that all of the claims "ar[o]se from the same underlying set of facts" and "[b]reaking [the] case into separate pieces would create additional costs for the parties and for the courts").[8]

## B.   The Parties' Other Pending Motions

Given the conclusion that this case should be dismissed in its entirety for improper venue, all but one of the other motions currently pending before this Court, including

---

[8]     Section 1406 requires dismissal of "a case laying venue in the wrong division or district" unless the court finds that it would be "in the interest of justice" to transfer the case to a district "in which it could have been brought." 28 U.S.C. § 1406(a). Here, the interests of justice do not warrant transfer in lieu of dismissal because Westley, particularly given his prior litigation in *Westley II and III*, "reasonably could have foreseen that [this] forum . . . was improper . . . and similar conduct should be discouraged." *Stanifer v. Brannan*, 564 F.3d 455, 460 (6th Cir. 2009) (quoting 3 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3827 at 602–04 (3d ed. 1998)); *see also Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1544 (10th Cir. 1996) ("[I]t is not in the interest of justice to transfer where a plaintiff either realized or should have realized that the forum in which he or she filed was improper."); *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) ("[A] transfer in this case would reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice."); *Stanifer*, 564 F.3d at 460 (affirming a decision to dismiss rather than transfer where the plaintiff "misuse[d] . . . the court's process" and imposed "substantial costs to the judicial system" and the defendants).

Westley's motion for entry of default against Defendant Korus,[9] are moot. *See Xena Inv., Ltd. v. Magnum Fund Mgmt. Ltd.*, 726 F.3d 1278, 1283, 1286 (11th Cir. 2013) (affirming a judgment dismissing an action for improper venue and denying all other pending motions as moot); *Harris v. Tulsa 66ers*, No. 14-cv-2765, 2014 WL 5356683, at *3 (D. Colo. Oct. 16, 2014) (dismissing an action for improper venue and denying all pending motions as moot).

The one remaining motion is Westley's motion for leave to file an amended complaint, through which he apparently seeks to rewrite his claims against Sapient and Starbucks, join three additional defendants, and add new claims regarding an alleged business associate, Alex Omes, who purportedly "died in late January 2015 under suspicious circumstances on the date of his own $30,000,000 civil lawsuit in . . . Miami Dade County court." (Doc. No. 202 at 2, 5.) Westley's motion for leave to amend, however, should be denied for two distinct reasons. First, Westley has not provided the

---

[9]     Even if Westley's motion for entry of default were not mooted by the finding of improper venue, this Court would still recommend its denial because Korus has defended against this action by filing a motion to dismiss for lack of personal jurisdiction (Doc. No. 119). *See* Fed. R. Civ. P. 55(a) (providing for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend"); *Semler v. Klang*, 603 F. Supp. 2d 1211, 1218–19 (D. Minn. 2009) ("When determining whether a Default Judgment is appropriate, the Court must consider whether the assertedly defaulting party has filed a responsive Answer, or other pleading, prior to an entry of Default Judgment."); *Johnson v. Allied Interstate, Inc.*, No. 02-910, 2002 WL 1906024, at *2 (D. Minn. Aug. 19, 2002) (denying a motion for default judgment where the defendant, though late in answering the complaint, had since responded and was "prepared to defend the lawsuit on the merits"); *Lee v. Bhd. of Maint. of Way Emps.-Burlington N. Sys. Fed'n*, 139 F.R.D. 376, 381 (D. Minn. 1991) ("Where a defendant appears and indicates a desire to contest an action, a court may exercise its discretion to refuse to enter default, in accordance with the policy of allowing cases to be tried on the merits.").

court or the Defendants with the proposed amended complaint. *See* D. Minn. LR 15.1(b)

("Any motion to amend a pleading must be accompanied by . . . a copy of the proposed

amended pleading [and] a version of the proposed amended pleading that shows . . . how

the proposed amended pleading differs from the operative pleading."). Second, given that

Westley's motion indicates that he wishes to replead his claims against Sapient and

Starbucks, add three more insurance companies as defendants, and add claims concerning

the death of a Florida resident, any amendment would not cure the lack of proper venue

and would therefore be futile. *See Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 446

(8th Cir. 2014) (holding that a court need not grant leave to amend when the plaintiff's

"proposed amendments to his complaint would be futile"). Accordingly, this Court

recommends that Westley's motion for leave to amend his complaint be denied, and that

all other pending motions be denied as moot.

## C.      Filing Injunction

Under the All Writs Act, and as a matter of inherent authority, federal courts may

impose filing injunctions on litigants who have abused the judicial process through

vexatious, burdensome, baseless, or repetitive litigation.[10] *See Cromer v. Kraft Foods N.*

*Am., Inc.*, 390 F.3d 812, 817–19 (4th Cir. 2004) ("[T]he All Writs Act . . . grants federal

courts the authority to limit access to the courts by vexatious and repetitive litigants

. . . ."); *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984) ("Federal courts have

---

[10]      The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."); *City of Shorewood v. Johnson*, No. 11-374, 2012 WL 695855, at *4 (D. Minn. Mar. 5, 2012) (explaining that "[f]ederal courts have the inherent power to impose sanctions to regulate their dockets, promote judicial efficiency, and deter frivolous filings," including by barring those who have engaged in a pattern of abusive litigation activities "from any additional filings without first obtaining leave from the Court"). In determining whether a filing injunction is warranted, courts consider the following factors: (1) the party's history of litigation, particularly whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had an objectively good faith basis for pursuing the litigation; (3) whether the party has caused needless expense to other parties or has posed an unnecessary burden on the courts; and (4) whether other sanctions would adequately protect the court and other parties. *See Cromer*, 390 F.3d at 818; *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).

This Court finds that all four factors weigh in favor of imposing a filing injunction against Westley. In less than five years, Westley has instituted five lawsuits against a rotating and increasingly large cast of defendants alleging similar claims relating to the loss of real property in Florida. Each of his four previous suits have been dismissed on various grounds, including lack of personal jurisdiction, improper venue, and failure to state a claim, and he has been barred from proceeding *pro se* in Miami-Dade County court for repeatedly violating court orders and filing immaterial pleadings. In the process, Westley has been admonished for suing out-of-state defendants with little or no

24

connection to the filing forum, asserting claims based on events that occurred elsewhere, filing "convoluted" pleadings that are riddled with conclusory allegations and fail to meet federal pleading requirements, and relying on statutes that do not apply under the circumstances or provide no private right of action. *See Westley II*, 896 F. Supp. 2d at 791–807; *id.*, 2012 WL 6591354, at *11–14; *Westley III*, No. 13-2044, Doc. No. 54 at 5–6; *Westley IV*, No. 1:14-cv-22939, Doc. No. 14 at 4–6.

Rather than heeding those admonishments, Westley has cast them as part of an ever-growing conspiracy against him. Westley's current complaint, like its predecessors in *Westley II*, *III*, and *IV*, woefully fails to meet the pleading requirements of Rules 8(a)(2), 9(b), and 10 — the claims are exceedingly long on conclusory labels (*e.g.*, fraud, bribery, perjury, racketeering, corruption, terrorism), exceedingly short on specific factual allegations, and indiscriminately lump together most or all of the thirty-two Defendants without specifying what each one did. Westley continues to invoke statutes that do not provide a private right of action (*e.g.*, the criminal wire and mail fraud statutes, the Espionage and Sedition Acts, and OSHA) and to assert causes of action that simply do not exist (*e.g.*, "public trust/policy corruption"). *See Westley II*, 896 F. Supp. 2d at 804–07. He continues to sue parties who have little or no connection to Minnesota (*i.e.*, the five Florida judges, at least six of the Florida attorneys, the Florida condominium association, and realtors Korein and Korus), and to raise claims that have no substantial connection to this forum. (*See* Doc. Nos. 47, 69–73, 78, 94, 123–25, 149,

153, 179.) He has also made several dubious representations to this Court,[11] leveled

cavalier accusations, and filed numerous baseless motions, including those seeking to

overturn the admission *pro hac vice* of several defense attorneys. (*See* Doc. Nos. 129,

168, 206.) And his lawsuits have become increasingly inflammatory and outlandish, to

the point that he is now alleging that the Defendants have engaged in "domestic terrorism

. . . on behalf of Mossad Israeli[] Defense Force operatives of foreign nations," and

evaded liability by engaging in "acts of sodomy and adulterous sexual relations with

female Miami Dade county judges, court officers and government officials." (*See* Compl.

¶¶ 15, 32.)

While this Court is mindful that all persons have a right of access to the courts and

that *pro se* litigants are entitled to some measure of leniency, neither that right nor that

latitude permit a *pro se* party to abuse the judicial process. *See In re Wislow*, 17 F.3d 314,

315 (10th Cir. 1994) ("The right of access to the courts is neither absolute nor

unconditional, and there is no constitutional right of access to the courts to prosecute an

action that is frivolous or malicious."); *see also United States v. Green*, 691 F.3d 960,

966 (8th Cir. 2012) ("The right of self-representation is not a license not to comply with

relevant rules of procedural and substantive law.") (quotation omitted). Westley is not a

---

[11]     For example, Westley filed what purported to be a joint stipulation between
himself and counsel for the condominium association, Korein, and Korus to move the
hearing date on those Defendants' motion to dismiss. (*See* Doc. No. 174.) Although the
stipulation contained defense counsel's printed name under a blank signature line, it was
not actually signed by counsel and he has since notified this Court that he "never
executed the stipulation" filed by Westley. (*See* Doc. No. 235, Aff. of Christopher P.
Renz ¶ 8.)

litigant who has made a few missteps; rather, he is "a litigant who refuses to accept an adverse ruling, and relitigates, vexatiously, the very same claims against any party who has any connection to the loss of his [property]." *Dixon v. Deutsche Bank Nat'l Trust Co.*, No. 06-2858, 2008 WL 4151835, at *14 (D. Minn. Sept. 3, 2008) (barring a plaintiff from any future *pro se* filings absent leave of the court); *see also Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1524 (9th Cir. 1983) (upholding a filing injunction where the plaintiff had "shown his intention continually to relitigate claims that have been previously dismissed," and explaining that such an injunction "need not be premised on exact repetition of an earlier lawsuit"). Given his history of litigation, which has imposed unwarranted burdens on courts and undue expense on an expanding list of defendants, this Court recommends that Westley be enjoined from filing any new lawsuits, pleadings, or other papers in the District of Minnesota relating to the defendants, facts, or issues involved in this or related actions unless (1) he is represented by an attorney licensed to practice before this Court or (2) he obtains prior written approval from a judicial officer of this District.[12]

---

[12]     This Court recognizes that a party is entitled to notice and an opportunity to be heard before a filing injunction is issued. *See In re Pointer*, 345 F. App'x 204, 205 (8th Cir. 2009); *Cromer*, 390 F.3d at 819. This Report and Recommendation, along with Westley's opportunity to object to its contents, meets those requirements. *See Tripati v. Beamen*, 878 F.2d 351, 354 (10th Cir. 1989) ("The notice and opportunity requirement does not . . . require an in-person hearing in the district court.").

## RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants Lawrence Schwartz, Beatrice Butchko, Jennifer Bailer, Victoria Platzer, and Diane Ward's Motion to Dismiss (Doc. No. 43), Defendant Bradley Trushin's Motion to Dismiss (Doc. No. 89), and the Florida Attorney General's Office's Motion to Dismiss (Doc. No. 251) be **GRANTED** on the ground of improper venue;

2.      Plaintiff John Westley's complaint (Doc. No. 1) be **DISMISSED WITHOUT PREJUDICE** for improper venue;

3.      Westley's Motion for Leave to File an Amended Complaint (Doc. No. 202) be **DENIED**;

4.      All other pending motions (Doc. Nos. 22, 33, 47, 53, 75, 106, 112, 119, 129, 148, 150, 168, 177, 185, 206, 226, 248) be **DENIED AS MOOT**[13]; and

5.      Westley be enjoined from filing any further lawsuits, pleadings, or other papers in the District of Minnesota concerning the defendants, facts, or issues involved in this or related actions unless he (1) is represented by an attorney licensed to practice before this Court, or (2) obtains prior written approval from a judicial officer of this District.

Date:  April 17, 2015

s/ Becky R. Thorson
_____
BECKY R. THORSON
United States Magistrate Judge

---

[13]     This would include motions filed after the issuance of this Report and Recommendation but before judgment in this case is ultimately entered.

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 1, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3,500 words. A district judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.